[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14670
_____

D.C. Docket No. 1:16-cv-00876-WKW-TFM

FLAT CREEK TRANSPORTATION, LLC,
an Alabama limited liability company,

Plaintiff - Appellant,

versus

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,
KENNY PRICE,
in his capacity as Alabama Division Administrator
(Federal Motor Carrier Safety Administration),
ELAINE L. CHAO,
in her capacity as Secretary of the United States Department of Transportation,

Defendants - Appellees,

ANTHONY R. FOXX,
in his capacity as Secretary of the United States Department of Transportation,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 9, 2019)

Before TJOFLAT, NEWSOM, and GILMAN,* Circuit Judges.

NEWSOM, Circuit Judge:

Flat Creek Transportation sued for declaratory and injunctive relief on the ground that the Federal Motor Carrier Safety Administration had unfairly targeted it for compliance reviews and used an unsound methodology in doing so. The district court determined that it lacked subject matter jurisdiction to consider Flat Creek's claims. We reach the same destination, albeit by a different route. We hold that Flat Creek has failed to establish that it suffered an injury in fact sufficient to confer standing to sue.

**I**

Flat Creek is a commercial trucking company that transports non-hazardous materials—mainly refrigerated food products. Because it operates in interstate commerce, Flat Creek is subject to Department of Transportation regulations. And because its claim in this case arises against the backdrop of that regulatory

_____

* Honorable Ronald L. Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

framework, we begin with an overview.  (Warning: Unavoidable Acronyms Ahead.)

## A

Within the Department of Transportation, the Federal Motor Carrier Safety Administration ("FMCSA") investigates carriers and operators to ensure that they are safe to operate on the nation's roadways.  FMCSA uses a safety-fitness rating methodology—the Safety Measurement System ("SMS")—to quantify carriers' performance.  For example, the SMS pulls data from the Motor Carrier Management Information System ("MCMIS") related to the following metrics: (1) unsafe driving, (2) fatigued driving, (3) driver fitness, (4) controlled-substance and alcohol usage, (5) vehicle maintenance, (6) hazardous-material compliance, and (7) crash history.  *See* 75 Fed. Reg. 18256, 18258 (April 9, 2010).  A carrier is given a weighted score in each category, and then ranked against other carriers.  A non-passenger carrier like Flat Creek will receive a "High Risk" designation only if it both (1) has "not received an onsite investigation in the previous 18 months" and (2) scores at or above the 90th percentile for two consecutive months in two or more of the MCMIS categories "most closely correlated with crash risk": unsafe driving, fatigued driving, vehicle maintenance, and crash history.  *See* 81 Fed. Reg. 11875–11876 Table 2 (March 7, 2016).

This "High Risk" designation matters to carriers because FMCSA concentrates its compliance-review resources on high-risk carriers.  A compliance review is an in-depth "on-site investigation of the carrier's operations" that examines the carrier's compliance with FMCSA regulations.  49 C.F.R. § 385.3; *see generally* 49 C.F.R. § 350 *et seq*.  During a compliance review, an investigator will commonly check driver-qualification files, records of duty status (basically, a measure of the number of hours a driver works per 24-hour day), and vehicle-maintenance data.  Within 30 days of the review, FMCSA is required to give the carrier written notice that it has received one of three safety ratings: Satisfactory, Conditional, or Unsatisfactory.  49 C.F.R. §§ 385.3, 385.11(a).

Safety ratings become "final" in slightly different ways.  A Satisfactory rating, the highest possible, is final and effective on the date of notice.  49 C.F.R. § 385.11(b).  A Conditional or Unsatisfactory rating becomes final after 60 days if it is not upgraded or overturned.  *Id.* § 385.11(c).  If a carrier seeks administrative review of an Unsatisfactory or Conditional rating, FMCSA's Chief Safety Officer must issue a written decision, which will constitute final agency action.  *Id.* § 385.15.  Alternatively, a carrier can take corrective action to remedy a reported defect and then request an upgrade from FMCSA.  *Id.* § 385.11(f).  If a carrier receives a final Unsatisfactory safety rating, it is prohibited from operating.  *Id.* § 385.13(a).

4

Naturally, commercial carriers don't particularly want a "High Risk" designation—because it increases their odds of a compliance review, which in turn increases the odds of suffering an Unsatisfactory safety rating. To address carriers' concerns about the accuracy of the data that factor into the MCMIS system and that can prompt a high-risk designation, FMCSA operates DataQs, an online system that permits carriers to contest those data. *See* FMCSA Notice to Amend a System of Records, 77 Fed. Reg. 42548-02, 42551 (July 19, 2012).

**B**

Flat Creek's managing member is Charles Patterson Sr.; Charles' son, Charles Patterson Jr., formed and operates a separate trucking company, Liberty Express. In July 2016, FMCSA's Alabama Division conducted a compliance review of Liberty. Flat Creek alleges that during Liberty's review, FMCSA agents asked a bunch of questions about Flat Creek. Not long after, Flat Creek says, its regulatory consultant "received surreptitious reports from confidential informant(s) that agents … planned an unannounced on-site compliance investigation at Flat Creek with the intent to falsely charge Flat Creek with multiple regulatory violations sufficient to … forc[e] a cessation of Flat Creek's operations and likely leading to business closure." Br. of Appellant at 8–9.

Flat Creek further asserts that it received "flawed" scores and misleading crash indicators from the MCMIS data, which FMCSA failed to keep "complete,

timely, and accurate" as required by 49 U.S.C. § 31106(a)(3)(F).  Flat Creek insists

that, contrary to the MCMIS data, the company's industry performance was above

average.  Because of the allegedly false data, Flat Creek contends that it "has been

consistently but illegally targeted and harassed with multiple unwanted

interventions by FMCSA agents."  Compl. at ¶ 47.  It points to three specific

events: an allegedly false Notice of Violation on October 6, 2011; another of the

same, on August 10, 2012; and an unfavorable compliance-review report on June

15, 2015.  And even before those three instances, Flat Creek alleges that it was

subject to "an unusually high number of [compliance review] interventions."  *Id.* at

¶ 48.  Most provocatively, Flat Creek further asserts that FMCSA's adverse

regulatory actions were taken in part due to "on[going] prejudice and bias" against

Patterson Sr.  Compl. at ¶ 58.

Flat Creek admits that none of the additional compliance reviews "resulted

in a safety rating less than 'Satisfactory.'"

## C

Flat Creek filed a complaint seeking declaratory and injunctive relief under

the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* (2000).  FMCSA

responded with a motion to dismiss for lack of subject matter jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(1).  While the motion to dismiss was

pending, Flat Creek received a letter from FMCSA's Alabama Division notifying it

of an impending on-site compliance review.  Seeking to head off that review, Flat

Creek filed an emergency motion for a preliminary injunction.  Flat Creek's

motion was denied, and the review went ahead as scheduled.

Following the compliance review, FMCSA initially advised Flat Creek that

its safety rating would be downgraded from Satisfactory to Conditional.  FMCSA

argued to the district court that the case was unripe because the new Conditional

rating was not yet final.  A month later, however, FMCSA notified the district

court that the agency had reviewed Flat Creek's downgraded safety rating sua

sponte, removed a violation incorrectly included in the calculation, and restored the

rating to Satisfactory.[1]

The district court granted FMCSA's Rule 12(b)(1) motion on the ground that

the Hobbs Act, 28 U.S.C. § 2342(3)(A), vested the courts of appeals with exclusive

---

[1] Because Flat Creek's safety rating was upgraded during the course of this litigation, its most recent "Satisfactory" mark is not reflected in its complaint.  Flat Creek contends that the district court erred when it said that it was engaging in a "facial attack" analysis of subject matter jurisdiction—which limits a court to a plaintiff's allegations—and then proceeded to look beyond the complaint for proof that Flat Creek ultimately received a "Satisfactory" rating. Ranging beyond the complaint, Flat Creek asserts, is permissible only in the case of a "factual attack" on subject matter jurisdiction. *See Garcia v. Copenhaver, Bell & Assoc.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)).  But, where the extra-complaint fact does not implicate the merits of the plaintiff's case, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529).  Moreover, and in any event—and dispositively here—the fact that Flat Creek's safety rating is now "Satisfactory" is *undisputed*. *See* Br. of Appellant at 21 ("Flat Creek's … "Satisfactory" safety rating [is] ultimately the result of the March 28, 2017 compliance review.").

jurisdiction to provide Flat Creek the injunctive relief that it had requested.[2]  We find it unnecessary to decide the Hobbs Act question, because we conclude that Flat Creek has failed to establish standing to sue.

## II

We review *de novo* whether a party has standing.  *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339 (11th Cir. 2017).  Flat Creek contends that it has standing to sue because it was injured in two ways: *first*, its most recent safety rating—which originally came back "Conditional" but was thereafter upgraded to "Satisfactory"—and *second*, by the ongoing potential for agency bias in the conduct of compliance reviews.  We hold that the injuries that Flat Creek alleges do not establish the requisite standing.

The doctrine of standing is "an essential and unchanging part" of the case-or-controversy requirement embodied in Article III of the Constitution.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The "'irreducible constitutional

---

[2] Not *that* Hobbs Act.  *See* 18 U.S.C. § 1951.  This one vests exclusive jurisdiction in the courts of appeals

> to enjoin, set aside, suspend (in whole or in part), or to determine the validity of … all *rules, regulations, or final orders* of the Secretary of Transportation issued … pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49.

28 U.S.C. § 2342(3)(A) (emphasis added).  The question that we excuse ourselves from deciding today is whether Flat Creek's challenges are sufficiently broad that they, in effect, contest the validity of an agency rule, regulation, or final order.

minimum' of standing" requires a plaintiff to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560–61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* And because standing doctrine is intended to "confine[] the federal courts to a properly judicial role," *id.*, we take seriously the requirement that a plaintiff clearly demonstrate each requirement. Finally, and importantly here, the Supreme Court has made clear that "Article III demands that an 'actual controversy' persist throughout all stages of litigation" and, therefore, that standing requirements "must be met by persons seeking appellate review, just as [they] must be met by persons appearing in courts of first instance." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013), and *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)).

"First and foremost" among the standing doctrine's requirements is "injury in fact." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). In order to satisfy the injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest'" that is both (1) "'concrete and particularized'" and (2) "'actual or imminent.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). For an injury to be

9

"concrete," "it must actually exist"—that is, it must be "'real,' and not 'abstract.'" *Id*. (quoting *Webster's Third New International Dictionary* 472 (1971)).  And for an injury to be "particularized," "it 'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Lujan*, 504 U.S. at 560).

Flat Creek's allegations don't meet the constitutional standard.  To begin with the most obvious point, Flat Creek has no standing to pursue its once-upon-a-time pre-enforcement effort to prevent FMCSA from conducting a compliance review.  While Flat Creek's case was pending in the district court, the compliance review went forward, and all now agree that Flat Creek received a Satisfactory safety rating, the highest possible mark.  Flat Creek certainly suffered no cognizable injury as a result of a passing rating.  *See Ezzell Trucking, Inc. v. Fed. Motor Carrier Safety Admin.*, 309 F.3d 24, 25–26 (D.C. Cir. 2002) (dismissing carrier's challenge for lack of standing under similar circumstances).[3]

Separately, and notwithstanding its Satisfactory rating, Flat Creek alleges that it continues to suffer present injury because it remains subject to an enhanced threat of future compliance reviews at the hands of (in its view) a biased agency. In particular, Flat Creek asserts that FMCSA has an "improper on[going] prejudice

---

[3] Alternatively, one might view this aspect of Flat Creek's lawsuit as moot, in that it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution"—as it must "through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

10

and bias against [Charles] Patterson, Sr. and Flat Creek" and that FMCSA will use future compliance reviews "as a pretext for [its] real but illegal purpose of fabricating regulatory violations" and ultimately "terminating Flat Creek's operations." Compl. at ¶¶ 58–59. These allegations fail to satisfy the constitutional test. The injury that Flat Creek asserts—designation as a "High Risk" carrier, subject to an increased likelihood of compliance reviews—is neither "concrete" nor "imminent," but rather "conjectural" and "hypothetical." *Spokeo*, 136 S. Ct. at 1548. That is so for two related reasons. First, as a matter of sheer timing, Flat Creek can't be designated "High Risk" for a full 18 months after an onsite investigation. *See FMCSA Notification of Changes to the Definition of High Risk Motor Carrier*, 81 Fed. Reg. 11875, 11875 (March 6, 2016) ("Non-passenger carriers are considered 'High Risk' if they have two or more" safety categories "at or above the 90th percentile for two consecutive months *and they have not received an onsite investigation in the previous 18 months*." (emphasis added)). As already noted, during the course of this litigation, in April 2017, the Administration conducted an onsite investigation of Flat Creek—meaning that Flat Creek wasn't even *eligible* for a "High Risk" classification until October 2018. Flat Creek has given us no indication during the pendency of this appeal that any such contingency has materialized. *Cf. Whitmore v. Arkansas*, 495 U.S. 149, 158

11

(1990) (holding that "[a]llegations of possible future injury" do not confer Article III standing).

Second, even after the 18-month period runs, a carrier can be deemed "High Risk" only if additional conditions obtain. In particular, before a carrier can be designated "High Risk," it must be determined that the carrier scores at or above the 90th percentile on two of the following metrics: (1) unsafe driving, (2) fatigued driving, (3) vehicle maintenance, and (4) crash history. *See* 81 Fed. Reg. 11875, 11876 Table 2. Again, so far as we can tell from the record and Flat Creek's arguments to us, there is no indication that any of those conditions has been satisfied.[4]

Because Flat Creek has shown neither concreteness nor imminence, it has failed to establish that it has suffered a cognizable injury in fact. Accordingly, it lacks standing to sue.

\* \* \*

---

[4] Note that, just as Flat Creek's challenge to the April 2017 compliance review could be deemed moot—in addition to insufficiently injurious for standing purposes—its allegation that it faces future compliance reviews at some unspecified time down the road might be thought to be unripe—in addition to impermissibly hypothetical and conjectural for standing purposes. *See, e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) (holding that a claim that "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" is not ripe for adjudication).

Flat Creek has failed to establish the requisite standing to sue under Article III of the Constitution.  We lack jurisdiction to address its claim, and therefore **AFFIRM** the district court's dismissal of Flat Creek's complaint.