[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10562

_____

D.C. Docket No. 1:17-cv-23575-JLK

NIKKI MCINTOSH, et al.,

                                        Plaintiffs - Appellants,

versus

ROYAL CARIBBEAN CRUISES, LTD.,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 27, 2021)

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

JORDAN, Circuit Judge:

    A "cruise to nowhere" usually involves a ship sailing into international waters

for several days without any intermediate port calls.  On such a cruise, it's

supposedly the journey, and not the destination, that matters.  This maritime negligence case involves a different type of "cruise to nowhere"—one that never departed.  The *Liberty of the Seas*, owned by Royal Caribbean Cruises, was scheduled to sail from Galveston, Texas, on August 27, 2017.  But Hurricane Harvey—a Category 4 storm that eventually made landfall in Texas and Louisiana—had other ideas, and Royal Caribbean cancelled the cruise on the date of its scheduled departure and offered refunds to the would-be passengers.

One of those passengers, Nikki McIntosh filed, on behalf of other similarly situated passengers, a class-action complaint against Royal Caribbean on several tort theories, including negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  She alleged that Royal Caribbean canceled the cruise and offered refunds only on the day the *Liberty of the Seas* was set to sail. Because the ticket contracts provided that no refunds would be given for passenger cancelations within 14 days of the voyage, and because Royal Caribbean repeatedly told passengers that they would lose their entire payments for the cruise if they canceled, the plaintiffs claimed that they were forced to travel to Galveston and nearby areas (like Houston) as Hurricane Harvey approached.  She alleged that, while in Texas, they were forced to endure hurricane-force conditions, and suffered physical and emotional injuries.

2

In a series of orders, the district court ruled that the case could not proceed as a class action due to a class-action waiver in the passengers' ticket contracts; that the complaint failed to plead damages sufficient to satisfy the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332; that the plaintiffs had not established maritime jurisdiction under 28 U.S.C. § 1333(1); and that the claims for intentional and negligent infliction of emotional distress failed as a matter of law. After the district court ruled that the case could not proceed as a class action, over 100 plaintiffs filed a joint amended complaint asserting individual claims. Based upon these rulings, the court dismissed the plaintiffs' second amended complaint with prejudice.

The plaintiffs now appeal, challenging the district court's jurisdictional and merits rulings.

## I

We exercise plenary review to determine whether the district court had subject-matter jurisdiction. *See, e.g.*, *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1313 (11th Cir. 2008).

## II

The district court, acting *sua sponte*, ruled that the plaintiffs could not aggregate their emotional distress claims to satisfy the $75,000 amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. The court

reasoned that the plaintiffs were not seeking to enforce rights in which they had a common and undivided interest. The court also summarily stated that the plaintiffs' claims did not arise under federal maritime law so as to provide for jurisdiction under 28 U.S.C. § 1333(1). We consider each of these rulings below.

**A**

In ruling that diversity jurisdiction was lacking, the district court committed two errors, one procedural and one substantive. Each one provides an independent basis for reversal.

First, the district court failed to give the plaintiffs notice of its intent to *sua sponte* address the matter of diversity jurisdiction. A federal court has an independent duty to ensure that it has subject-matter jurisdiction. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). And that means that it can take up the issue of such jurisdiction on its own. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000). But when it does so, it must give the parties notice and an opportunity to be heard. Its failure to do so here, therefore, was error. *See Day v. McDonough*, 547 U.S. 198, 210 (2006) ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.") (citation omitted); *Lipofsky v. New York State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) (holding that if a court raises on its own the issue of venue or personal jurisdiction, it "may not dismiss without first giving the

4

parties an opportunity to present their views on the issue") (citation omitted); *Republic Nat'l Bank of Dallas, et al. v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955) (explaining that the denial of the right to be heard is a violation "of due process which is never harmless error").

Second, putting aside the aggregation of damages issue, the district court failed to consider whether any individual plaintiff had satisfied the $75,000 amount-in-controversy requirement. *See Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 549.

When a court conducts a facial review of a complaint to determine whether it has diversity jurisdiction, it must accept the plaintiff's factual allegations. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). And, taking those factual allegations as true, the court can dismiss only if it is convinced "to a legal certainty" that the claims of the plaintiff in question will not exceed $75,000 (the current jurisdictional threshold). *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 346 (1977); *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 354 (1961); *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018); *Deen v. Egleston*, 597 F.3d 1223, 1228 (11th Cir. 2010).

But where, as here, a plaintiff "pleads an unspecified amount of damages, [she] bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum. This additional

requirement is 'warranted because there is simply no estimate of damages to which a court can defer.'" *Fastcase*, 907 F.3d at 1342 (citation omitted). Because the district court acted *sua sponte*, it did not give the plaintiffs an opportunity to satisfy their burden. Nevertheless, based on our review of the record, we are convinced that at least some of the plaintiffs sufficiently pled damages over $75,000.

The plaintiffs alleged that, as a result of Royal Caribbean's delay in canceling the cruise and offering refunds, they had to travel to Galveston and nearby areas in Texas that were in a state of emergency due to Hurricane Harvey. They had to spend days in those locations trapped by a "devastating storm," often without power, and with limited food and water. And, as a result, they were "injured about their body and extremities," sustaining physical pain and suffering; mental and emotional anguish; temporary, permanent, and/or physical disability; impairment; and disfigurement. They also incurred medical expenses for the care and treatment of their injuries.

These alleged injuries and expenses—accepted as true—are sufficient to plead damages that exceed the $75,000 amount-in-controversy requirement. *See, e.g., Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 809 (7th Cir. 2017) (claimed injuries and damages caused by the explosion of a shower glass door in a hotel room exceeded the $75,000 amount-in-controversy requirement, even though the plaintiff recovered only $12,000, because at the time of filing, she brought claims in good

faith for compensatory and punitive damages exceeding $150,000). And if there were any doubt, it is erased by the plaintiffs' individual requests for punitive damages. *See, e.g.*, *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in diversity cases, punitive damages must be considered.").[1]

That does not mean, however, that diversity jurisdiction exists. Alienage diversity under 28 U.S.C. § 1332(a)(2) "must be complete," such that "an alien on both sides of a dispute will defeat jurisdiction." *Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018). Based on this principle, we held in *Caron* that § 1332(a)(2) "does not grant jurisdiction over a suit between a corporation incorporated solely in a foreign state and another alien, regardless of the corporation's principal place of business." *Id.* at 1365. Here it appears from our review of the record that Royal Caribbean is a citizen of Liberia, where it is incorporated, and that at least some of the plaintiffs are residents of other countries (e.g., Canada, Mexico, and the Philippines). On remand, therefore, the district court will need to address whether there is complete alienage diversity.

---

[1] Because Royal Caribbean does not raise the issue, we do not consider whether all of the plaintiffs could collectively allege that they suffered the same injuries. *See United States v. Seneneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (explaining the principle of party presentation). If Royal Caribbean suspects that some or all of the plaintiffs are exaggerating or misstating their alleged injuries, it can take discovery and file appropriate Rule 12(b)(1) motions mounting a factual attack on the allegations.

We add one more observation. The district court dismissed the plaintiffs' complaint with prejudice for lack of subject-matter jurisdiction. That was incorrect. If subject-matter jurisdiction does not exist, dismissal must be without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."). And if there was no subject-matter jurisdiction, the court should have vacated its rulings on the merits of the plaintiffs' claims (unless it was going to issue alternative holdings on the merits for purposes of appeal in case diversity jurisdiction existed).

**B**

On remand, the district court should also consider whether there is maritime jurisdiction. In one of its orders, the district court said that maritime law applied to the plaintiffs' claims. *See* D.E. 24 at 3. But in a later order, the district court summarily stated that the plaintiffs had not alleged any facts demonstrating federal-question (i.e., maritime) jurisdiction. *See* D.E. 48 at 4.

Congress has given the federal courts original jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The plaintiffs alleged that, in the event diversity jurisdiction did not exist as to some or all of them, the case was "brought under the admiralty and maritime jurisdiction" of the district

court, and that the claims asserted "ar[ose] under" the general maritime law of the United States. *See* Second Am. Compl., D.E. 30, at ¶¶ 81, 82, 84.

We express no view on whether the torts alleged by the plaintiffs arise under or are governed by federal maritime law. On remand, even though diversity jurisdiction may exist as to some or all of the plaintiffs, the district court will need to address whether any of their claims arise under federal maritime law because the elements of a tort can differ under maritime law and state law.

In determining whether federal maritime law governs any of the plaintiffs' claims, the district court will have to apply the location/connection test articulated by the Supreme Court in cases like *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) ("[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity."). Generally speaking, the "locality prong of the test for admiralty jurisdiction is satisfied if the incident occurred on 'navigable waters' or 'the injury suffered on land was caused by a vessel on navigable waters,'" while the connection prong "requires two determinations: (a) whether the incident has a potentially disruptive impact on maritime commerce; and (b) whether the activity shows a substantial relationship to a traditional maritime activity." 1 Thomas Schoenbaum, Admiralty and Maritime

Law § 3:5 (6th ed. & Nov. 2020 update).   *See also* 1 Steven F. Friedell, Benedict on Admiralty § 171 (7th rev. ed. & Dec. 2020 supp.).

We recognized a claim for negligent infliction of emotional distress under federal maritime law in *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337–38 (11th Cir. 2012), but that case was factually different.   *Chaparro* involved cruise ship passengers on a shore excursion who were trapped on a bus and witnessed a fatal shooting near a beach.   The plaintiffs here never embarked on their cruise.   The district court will therefore have to determine whether *Chaparro* extends to the circumstances alleged here under the *Great Lakes* location/connection test.   *Cf. Archawski v. Hanioti*, 350 U.S. 532, 533 (1956) (allegation that a ship owner accepted money to take passengers on a trip, and then abandoned the voyage, "stated a claim for breach of a maritime contract"); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 840–41 (9th Cir. 2002) (stating, in a case involving on-board activity, that "[a] cruise line's treatment of paying passengers clearly has potential to disrupt commercial activity, and certainly has substantial relationship to traditional maritime activity").[2]

---

[2] In a factually similar case, we concluded in an unpublished decision that there was maritime jurisdiction, but we did not explain our conclusion. *See Heinen v. Royal Caribbean Cruises LTD.*, 806 F. App'x 847, 849 n.1 (11th Cir. 2020).   We therefore do not view *Heinen* as helpful or persuasive.

Should the district court conclude that there is maritime jurisdiction, it will need to apply the "zone of interest" test we adopted in *Chaparro* to the negligent infliction of emotional distress claim. That test—which includes an "impact rule"—also "allows recovery if a plaintiff is 'placed in immediate risk of physical harm by [the defendant's negligent] conduct.'" *Chaparro*, 693 F.3d at 1337–38 (alteration in bracketed material) (quoting *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010)).[3]

## III

We reverse the dismissal of the plaintiffs' complaint for lack of subject-matter jurisdiction, and remand for further proceedings consistent with this opinion. Because of the uncertainty over jurisdiction, we do not address the class action waiver or the plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

**REVERSED AND REMANDED.**

---

[3] Some federal courts have also recognized a claim for intentional infliction of emotional distress under maritime law. *See, e.g.*, *Wallis*, 306 F.3d at 841–42; *Sangha v. Navig8 Ship Mgmt. PTE Ltd.*, 440 F. Supp. 3d 1286, 1300–01 (S.D. Ala. 2020); *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017). These courts have generally adopted, as the federal maritime rule, the standard set forth in § 46 (and its comment d) of the Restatement (Second) of Torts (1965). *See, e.g.*, *Wallis*, 306 F.3d at 841–42. That standard is the same one used by Florida courts to evaluate claims of intentional infliction of emotional distress. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985).