[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 22-14026

Non-Argument Calendar

————————————————

MICHAEL DAVIS,
individually and on behalf of all others similarly
situated,

Plaintiff-Appellant,

*versus*

PROFESSIONAL PARKING MANAGEMENT
CORPORATION,
YSA ARM LLC,
d.b.a. Oxygen XL,

Defendants-Appellees.

————————————————

2                  Opinion of the Court                  22-14026

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-61070-KMM

_____

Before WILSON, BRASHER, and MARCUS, Circuit Judges.

PER CURIAM:

Professional Parking Management Corporation issued Michael Davis an $85.00 charge for parking in one of its lots. Davis did not pay the charge because he believed it to violate a county ordinance, and Oxygen XL later sent him a letter to collect the debt on behalf of Professional Parking. Davis refused to pay and instead sued both companies under state and federal consumer protection laws. The district court dismissed his complaint with prejudice for lack of subject-matter jurisdiction because Davis did not allege an injury in fact. Davis now appeals that order. After careful review, we affirm the dismissal for lack of standing, but we remand with instructions for the district court to dismiss the case without prejudice.

**I.**

On November 26, 2021, Davis parked his Volvo sedan at a lot owned by Professional Parking in Hollywood, Florida. About one week later, Professional Parking issued Davis a "Parking Charge Notice," which imposed on him an $85.00 "Parking Charge." Davis did not pay the charge, though. He believed that Broward County Ordinance No. 20-164.2, titled "Private parking

tickets and violations prohibited," made this charge illegal. The ordinance prohibits the issuance of private parking tickets, which it defines as "a citation, ticket, notice of violation, or other instrument issued by a nongovernmental entity for a parking violation that seeks to impose a monetary penalty or fine."

Several months later, on March 28, 2022, Oxygen XL sent Davis a debt collection letter to "collect a debt that [he] owe[d] to Professional Parking Management Corp." because of the "Public Charge Notice." Davis disputed the debt to Oxygen XL, but the company continued to assert that he was responsible for the charge.

Davis then sued both Professional Parking and Oxygen XL in state court on April 26, 2022. He brought a claim against Professional Parking under Florida's Deceptive and Unfair Trade Practices Act, and claims against both Defendants under the Florida Consumer Collection Practices Act and the federal Fair Debt Collection Practices Act ("FDCPA"). Defendants properly removed the case to the United States District Court for the Southern District of Florida, and then moved to dismiss it for lack of subject-matter jurisdiction and for failure to state a claim.

On October 31, 2022, the district court granted the motion to dismiss with prejudice. It did not decide whether the parking charge violated the county ordinance. Instead, it held that Davis failed to allege a concrete injury in fact to establish Article III standing. Specifically, the court determined that because Davis was not

misled into making any debt payments, the debt collection letters themselves did not give rise to an injury.

This timely appeal followed.

## II.

We review *de novo* a district court's decision to grant a motion to dismiss for lack of subject-matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1250 (11th Cir. 2007).  We review a district court's *sua sponte* decision to dismiss a complaint with prejudice for abuse of discretion.  *Carruth v. Bentley*, 942 F.3d 1047, 1063 n.3 (11th Cir. 2019).

Among the requirements for subject-matter jurisdiction is Article III standing, which includes an "irreducible constitutional minimum . . . of three elements."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotations omitted).  Those three elements are (1) an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a judicial decision for the plaintiff.  *Id.*  This case concerns only the first element.

An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  To determine whether a harm is concrete, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  *Id.* (quotations omitted).  In other words, we look for a "close historical or common-law analogue for their asserted injury."  *Id.*  The easiest Article III injuries to identify are "traditional tangible harms, such as physical harms and

monetary harms." *Id.* Harder to pin down, but equally viable, are intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* Whether tangible or intangible, so long as there is a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," there can be an injury in fact. *Id.*

The big takeaway from this analysis is that Congress may elevate certain nontraditional harms to "legally cognizable injuries," but "it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 2204–05 (quotations omitted). Put simply, Congress cannot statutorily procure an injury from thin air. *See Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc) ("A bare statutory violation is not enough, no matter how beneficial we may think the statute to be." (quotations omitted)). So even if Congress says conduct is *unlawful*, we must look for a traditional analogue to determine whether it is *harmful*.

In this case, Davis alleged potentially unlawful conduct, but he failed to allege any harmful conduct. For starters, his complaint says that the Defendants violated several state and federal statutes, including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, and Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.*, and the federal Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et seq*. But our case law is clear that a statutory violation, by itself, does not create an injury. *See Hunstein*, 48 F.4th at 1245 ("Again -- no standing when the plaintiffs alleged a statutory violation that did not hurt them.").

Moreover, Davis does not provide an analogous traditional harm for these state or federal statutory violations. In fact, we have previously held that "the common law furnishes no analog[ue]" to claims brought under the FDCPA that are nearly identical to the claims Davis brought here. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 (11th Cir. 2020). In *Trichell*, two plaintiffs received debt collection letters after their respective state's statute of limitations had run on their debts. *Id*. at 995. They were not actually misled by the letters in any way. *Id*. Nevertheless, both plaintiffs sued the debt collection agencies and the owners of the debt under the FDCPA, and the district court dismissed the claims for failure to state a claim. *Id*. On appeal, a panel of this Court affirmed the dismissal, but it did so on standing grounds. *Id*. at 998. In relevant part, we determined that there was no common-law analogue to this sort of violation of the FDCPA. *Id*. "The closest historical comparison," we explained, was "fraudulent or negligent misrepresentation," but we concluded that those "torts differ . . . in fundamental ways" because they "required a showing of justifiable reliance and actual damages." *Id*.

Likewise, there is simply no analogue for any of the statutory violations -- state or federal -- alleged by Davis. Even if we construe his complaint as alleging that he was injured by his receipt

of Defendants' letters, this harm is still purely statutory, without any allegations of justifiable reliance, actual damages, or other concrete injury.  Indeed, like the *Trichell* plaintiffs, Davis never said that "he made any payments in response to the defendants' letters -- or even that he wasted time or money in determining whether to do so." *Id.* at 997.  Without a concrete injury, all Davis is left with is a letter allegedly misrepresenting his debt.  But, as we've held, these "misrepresentations are not actionable absent reliance and ensuing damages." *Id.* at 1000.

We are unpersuaded by Davis's arguments to the contrary. As for his reliance on *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), and *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), he is mistaken to suggest that they support the proposition that allegations of a statutory violation are enough for a concrete injury.  *Perry* properly followed this Circuit's and the Supreme Court's precedent by inquiring into whether a statutory violation had a common-law analogue and likening the Video Privacy Protection Act -- a very different statute from the ones at issue here -- to invasion of privacy.  854 F.3d at 1340–41.  And *Church* is an unpublished case that directly conflicts with, and is therefore abrogated by, the Supreme Court's later decision in *TransUnion*.  *Compare Church*, 654 F. App'x at 993 ("An injury-in-fact, as required by Article III, may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (quotations omitted)), *with TransUnion*, 141 S. Ct. at 2205 ("[T]his Court has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory

right and purports to authorize that person to sue to vindicate that right." (quotations omitted)).  Thus, these cases fail to support Davis's argument.

Davis also now claims that he "wasted time" by disputing the debt, that he faced additional stress because of the debt, and that his credit score might be impacted by the debt.  But the complaint does not include anything about wasted time, stress, or his credit score.  Davis cannot amend his complaint at this late stage through his appellate briefing.  *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 799 n.2 (11th Cir. 2022) (en banc); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint." (quotations omitted)).  Accordingly, we affirm the dismissal of Davis's complaint for lack of standing.

However, this dismissal was necessarily without prejudice.  As we've held many times, a dismissal for lack of standing is equivalent to a dismissal for lack of subject matter jurisdiction.  *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  And "[i]f subject-matter jurisdiction does not exist, dismissal must be without prejudice."  *McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313 (11th Cir. 2021).  Therefore, we remand with instructions that the district court reenter its judgment accordingly.  *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 935 (11th Cir. 2020) ("The proper remedy is for us to remand to the district court for a dismissal without prejudice."); *see also McIntosh*, 5 F.4th at 1313; *Stalley*, 524 F.3d at 1234–35.

22-14026                Opinion of the Court                9

**AFFIRMED IN PART; REMANDED IN PART.**