[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14144
_____

D.C. Docket No. 4:18-cv-00132-ACA


JOHN TRICHELL,
individually and on behalf of all others similarly situated,

Plaintiff - Appellant,


versus


MIDLAND CREDIT MANAGEMENT, INC.,
a Kansas corporation,
MIDLAND FUNDING, LLC,
a Delaware limited company,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

_____

No. 19-10120

_____

D.C. Docket No. 4:18-cv-00082-CDL


KEITH COOPER,
individually on behalf of himself and all others similarly situated,

Plaintiff - Appellant,


versus


MIDLAND CREDIT MANAGEMENT, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(July 6, 2020)

Before WILLIAM PRYOR, Chief Judge, MARTIN and KATSAS,[*] Circuit Judges.

KATSAS, Circuit Judge:

_____

[*] Honorable Gregory G. Katsas, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

Plaintiffs John Trichell and Keith Cooper received debt-collection letters that they say were *misleading*, but neither of them claims to have been *misled*. We consider whether Trichell and Cooper have Article III standing to pursue claims under the Fair Debt Collection Practices Act (FDCPA).

I

The FDCPA seeks to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Section 807 of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. Section 808 provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. Section 813 provides that "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person" for "any actual damage sustained by such person as a result of such failure," *id.* § 1692k(a)(1), and "such additional damages as the court may allow," subject to statutory caps, *id.* § 1692k(a)(2)(A).

These cases arise from alleged FDCPA violations by defendants Midland Funding, LLC, which buys defaulted consumer debt, and its sister company Midland Credit Management, Inc., which attempts to collect the debt.

In 2017, Midland Credit sent three collection letters to Alabama resident John Trichell, who had defaulted on credit-card debt sometime before 2011. Each

3

letter said that Trichell, who owed almost $43,000, had been "**pre-approved** for a discount program designed to save you money." Trichell App. 1-2 at 1, 2, 3 (formatting in original). The letters offered three repayment plans, all seemingly generous. Trichell could pay off his debt completely for about $13,000. He could pay off his debt in twelve monthly installments of about $1,800. Or he could create his own repayment plan with monthly payments as low as $50. The letters congratulated Trichell and encouraged him to "[a]ct now to maximize your savings and put this debt behind you." *Id.*

In fact, the offers were not so generous. Under Alabama law, the governing statute of limitations provides a defense if a suit to recover on a debt was filed more than six years after the last payment. *See* Ala. Code § 6-2-34(5); *Ex parte HealthSouth Corp.*, 974 So. 2d 288, 296 (Ala. 2007). Because Trichell had made no payments for over six years, any claim to recover the debt would be time-barred. At the bottom of each letter, a disclaimer acknowledged as much: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau." Trichell App. 1-2 at 1, 2, 3.

Trichell sued Midland Funding and Midland Credit under the FDCPA. He alleged that the collection letters were misleading and unfair in falsely suggesting that he could be sued or that the debt could be reported to credit-rating agencies.

4

Trichell sought to represent a class of similarly situated debtors and to recover statutory damages.

The district court dismissed the complaint for failure to state a claim. The court did not address whether Trichell had Article III standing to maintain his lawsuit. On the merits, the court concluded that the collection letters were neither misleading nor unfair.

The case of Keith Cooper, a Georgia resident, is similar. In 2017, Midland Credit sent a collection letter to Cooper, who had defaulted on credit-card debt in 2010. The letter offered Cooper seemingly attractive options for paying off his balance at steep discounts. But because the debt had been delinquent since 2010, claims on it would be time-barred. Ga. Code § 9-3-24. The letter contained a disclaimer, identical to those in the letters to Trichell, stating that Midland Credit would neither sue Cooper on the debt nor report it to credit bureaus.

Cooper sued Midland Credit under the FDCPA. He alleged that the letter was misleading because it failed to warn that making a partial payment on the debt could constitute a new promise to pay giving rise to a new limitations period. Cooper sought class certification and damages.

The district court dismissed the complaint for failure to state a claim. The court did not consider whether Cooper had Article III standing. On the merits, the

court reasoned that because the disclaimer promised no lawsuit, the collection letter was not misleading.

In briefing the appeals, no party raised the question of Article III standing. In both cases, however, we ordered the parties to address that issue at argument.

## II

Before reaching the merits, we must consider our own jurisdiction and that of the district court. *See*, *e.g.*, *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 398 (1979). In particular, we must ourselves decide whether the plaintiffs in these cases have Article III standing, *see United States v. Hays*, 515 U.S. 737, 742 (1995), and we must do so before reaching the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

## A

When the delegates to the Constitutional Convention gathered in the summer of 1787, the extent of federal-court jurisdiction formed a focal point of their discussions. *See* W. Casto, *The Supreme Court in the Early Republic: The Chief Justiceships of John Jay and Oliver Ellsworth* 5–16 (1995). In a debate over what became Article III, section 2, James Madison urged that the jurisdiction of the Supreme Court be limited to cases of a "Judiciary Nature," for the "right of expounding the Constitution in cases not of this nature ought not to be given to that

6

Department." 2 *Records of the Federal Convention of 1787*, at 430 (M. Farrand ed., 1911). The delegates agreed without objection. *Id.*

Consistent with Madison's admonition, Article III grants federal courts the "judicial Power" to resolve only "Cases" or "Controversies." U.S. Const. art. III §§ 1–2. As a result, federal courts may exercise their power only for "the determination of real, earnest, and vital controversy between individuals." *Chi. & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quotation marks omitted). This case-or-controversy requirement, embodied in the doctrine of standing, "confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Under settled precedent, the "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The party invoking the jurisdiction of a federal court bears the burden of establishing these elements to the extent required at each stage of the litigation. *Id.* at 561. Thus, at the motion-to-dismiss stage, Trichell and Cooper bore the burden of

7

alleging facts that plausibly establish their standing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–84 (2009); *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019).

The "foremost" standing requirement is injury in fact. *Steel Co.*, 523 U.S. at 103. An injury in fact consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Defs. of Wildlife*, 504 U.S. at 560 (quotation marks omitted). A "concrete" injury must be "*de facto*"—that is, it must be "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). A "particularized" injury "must affect the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). Each subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied. *See id.* at 1545; *Defs. of Wildlife*, 504 U.S. at 560. These cases turn most centrally on the requirement of concreteness.

As a general matter, tangible injuries qualify as concrete. *See Spokeo*, 136 S. Ct. at 1549. But the complaints here do not allege that the collection letters caused Trichell or Cooper any tangible injury. For example, neither plaintiff alleges that he made any payments in response to the defendants' letters—or even that he wasted time or money in determining whether to do so. Instead, when confronted with the standing issue during oral argument, Trichell and Cooper asserted only intangible injuries, in the form of alleged violations of the FDCPA.

8

Intangible injuries sometimes qualify as concrete, but not always.  In particular, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo*, 136 S. Ct. at 1549. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*  To determine whether an intangible injury is sufficiently concrete, we must look to both history and the judgment of Congress.  *Id.*

B

For history, we consider whether the alleged intangible injury bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Spokeo*, 136 S. Ct. at 1549.  *Spokeo* applied this analysis to claims under the Fair Credit Reporting Act (FCRA), which requires consumer reporting agencies to follow procedures to ensure the accuracy of consumer reports, and which authorizes private suits for willful violations.  *See id.* at 1545.  The Court analogized statutory claims for the disclosure of inaccurate reports to the traditional torts of libel and slander *per se*, which permit recovery even if the plaintiff's harms are "difficult to prove or measure."  *Id.* at 1549.  So, for example, a FCRA claim arising from the disclosure of an inaccurate zip code would not be actionable, for it is "difficult to imagine" how such a disclosure "could work any concrete harm" that would have been actionable at common law.

9

*Id.* at 1550. On the other hand, the Ninth Circuit concluded that a FCRA claim arising from the disclosure of false information about the plaintiff's age, employment, education, and wealth does involve a concrete injury, and therefore is actionable, because it is similar to claims actionable at common law. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113–17 (9th Cir. 2017). And, of course, a FCRA claim involving not only disclosure of false and sensitive information, but also consequential harms such as a reduced credit score, is also actionable. *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017).

In *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), this Court applied a historical analysis to assess Article III standing to raise claims under the Video Privacy Protection Act. That statute prohibits video tape service providers from disclosing customer records, and it provides a cause of action to anyone aggrieved by a violation. *See id.* at 1340. The Court analogized this statutory cause of action to the traditional tort of intrusion upon seclusion, which makes a defendant liable for invading the plaintiff's privacy without any further harm. *Id.* at 1340–41. Given the similarity of the statutory claim to the traditional tort, the Court held that a wrongful disclosure of the plaintiff's browsing records "satisfied the concreteness requirement of Article III standing." *Id.* at 1341.

By contrast, the common law furnishes no analog to the FDCPA claims asserted here. The closest historical comparison is to causes of action for

10

fraudulent or negligent misrepresentation, but these torts differ from the plaintiffs' claims in fundamental ways. For centuries, misrepresentation torts have required a showing of justifiable reliance and actual damages. *See Pasley v. Freeman* (1789) 100 Eng. Rep. 450, 453 (Buller, J.) ("Fraud without damage, or damage without fraud, gives no cause of action; but where these two concur, an action lies."); *Prosser & Keeton on the Law of Torts* §§ 105, 108 (5th ed. 1984). Today as well, a claim for fraudulent misrepresentation still requires the plaintiff to prove harm "caused to him by his justifiable reliance upon the misrepresentation." Restatement (Second) of Torts, § 525 (1977); *see also* Restatement (First) of Torts, § 525 (1938). Likewise, negligent misrepresentation claims still require plaintiffs to show harm "caused to them by their justifiable reliance upon" the false information. Restatement (Second) of Torts, § 552; *see also* Restatement (First) of Torts, § 552. In short, under our common-law tradition, "there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been." *Prosser & Keeton*, *supra*, § 110.

The claims asserted here depart dramatically from these centuries of tradition. The plaintiffs seek to recover for representations that they contend were misleading or unfair, but without proving even that they relied on the representations, much less that the reliance caused them any damages. By jettisoning the bedrock elements of reliance and damages, the plaintiffs assert

11

claims with no relationship to harms traditionally remediable in American or English courts. This cuts against Article III standing, for the purpose of that doctrine is to confine courts to their "traditional role." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009); *see also Spokeo*, 136 S. Ct. at 1547; *Raines*, 521 U.S. at 819.[1]

C

In assessing injury in fact, we also consider the judgment of Congress. It can matter for two reasons. First, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Defs. of Wildlife*, 504 U.S. at 578. So, for example, Congress may make "legally cognizable" the interests of a competitor harmed by conduct that violates a statute. *See*, *e.g.*, *Hardin v. Ky. Utils. Co.*, 390 U.S. 1, 5–6 (1968); *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 476–77 (1940). Second, Congress is "well positioned" to make its own judgment about which harms are sufficiently concrete, particularized, and imminent to constitute injuries in fact. *Spokeo*, 136 S. Ct. at 1549. For example, the Telephone Consumer Protection Act (TCPA) prohibits certain unsolicited communications and provides a cause of action to individuals

---

[1] The dissent contends that the claims here also bear a close relationship to the common-law tort of abuse of process. *Post*, at 37–39. But that tort requires "harm" caused by the improper use of "legal process." Restatement (Second) of Torts § 682; *see also* Restatement (First) of Torts § 682. Trichell and Cooper do not allege that the defendants used legal process against them or that they suffered any harm.

12

receiving them.  Although the statute has been understood to apply to both telephone calls and text messages, the TCPA's statutory findings highlight the burden imposed by unwanted calls but say nothing about unwanted texts.  *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394.  In part, this Court relied on those findings in holding that the receipt of unwanted phone calls is a concrete injury, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019), but the receipt of a single unwanted text message is not, *Salcedo*, 936 F.3d at 1169–70.

Congress's role in our assessment of Article III standing is necessarily limited.  As the master of its own statutes, Congress may freely make injuries legally cognizable for statutory purposes.  *See Defs. of Wildlife*, 504 U.S. at 578. But the requirements of concreteness, particularization, and imminence are "irreducible" elements of Article III itself.  *See id.* at 560–61.  In enacting statutory causes of action, Congress must assess for itself whether these constitutional requirements have been met.  *See* U.S. Const. art. VI, cl. 3 ("The Senators and Representatives ... shall be bound by Oath or Affirmation, to support this Constitution.").  And in adjudicating cases or controversies (or determining whether they exist), federal courts must decide for themselves whether applicable statutes are consistent with the Constitution.  *See City of Boerne v. Flores*, 521 U.S. 507, 524 (1997); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803).

13

That is why, as the Supreme Court has insisted time and again, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549; *see Earth Island Inst.*, 555 U.S. at 497; *Raines*, 521 U.S. at 820 n.3. On the contrary, the existence of a "cause of action does not affect the Article III standing analysis." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020). "Article III standing requires a concrete injury even in the context of a statutory violation," *Spokeo*, 136 S. Ct. at 1549, and Article III courts—while exercising jurisdiction to determine their own jurisdiction—must ultimately decide what injuries qualify as concrete. Congress's judgment may inform that assessment but cannot control it.[2]

Here, the judgment of Congress disfavors Trichell and Cooper. The FDCPA's statutory findings contain one sentence identifying the harms against which the statute is directed: "Abusive debt collection practices contribute to [a] number of personal bankruptcies, to marital instability, to the loss of jobs, and to

---

[2] The dissent repeatedly stresses the point that "when a statutory right itself protects a concrete interest, a plaintiff need not allege 'any *additional* harm beyond the one Congress has identified.'" *Post*, at 29 (quoting *Spokeo*, 136 S. Ct. at 1549); *see also id.* at 39, 44. We have no quarrel with that general proposition. But as we have shown, we cannot treat an injury as "concrete" for Article III purposes based only on Congress's say-so. Like the Sixth Circuit, we reject the "anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018).

14

invasions of individual privacy." 15 U.S.C. § 1692(a). These serious harms are a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead. In terms of "privacy and nuisance concerns," *Salcedo*, 936 F.3d at 1169, an unwanted mailing is more like an unwanted text message than an unwanted phone call. *See Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n*, 447 U.S. 530, 542 (1980) (recipient "may escape exposure to objectionable material simply by transferring the [communication] from envelope to wastebasket"). And while a recipient may take offense that a private party has violated the FDCPA, that is akin to taking offense that the government has violated other statutes—an injury that is canonically abstract as opposed to concrete. *See, e.g.*, *Defs. of Wildlife*, 504 U.S. at 575–76; *Allen v. Wright*, 468 U.S. 737, 754 (1984).

The FDCPA's private cause of action reinforces this analysis. It provides that a person may recover "any actual damage sustained by such person as a result of" an FDCPA violation and "such additional damages as the court may allow." 15 U.S.C. § 1692k(a). This formulation suggests that Congress viewed statutory damages not as an independent font of standing for plaintiffs without traditional injuries, but as an "additional" remedy for plaintiffs suffering "actual damage" caused by a statutory violation. For example, the Real Estate Settlement Procedures Act (RESPA) provides a cause of action for "actual damages" resulting

15

from statutory violations and, in pattern-or-practice cases, for "any additional damages, as the court may allow." 12 U.S.C. § 2605(f)(1). In construing RESPA, this Court held that "damages are an essential element" of a claim, *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245–46 (11th Cir. 2016), and further stated that "the use of 'additional' seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages," *id.* at 1247 n.4.

In sum, the FDCPA's narrow findings and cause of action affirmatively cut against Cooper and Trichell and, in any event, suggest no congressional judgment firm enough to break with centuries of tradition indicating that misrepresentations are not actionable absent reliance and ensuing damages.[3]

## D

Against this history and congressional judgment, Trichell and Cooper assert standing based on risk and informational injuries. Neither theory works.

## 1

Trichell and Cooper assert that the collections letters they received created a risk that unsophisticated consumers might be misled into making unnecessary or even harmful payments on time-barred debt. And that risk, they conclude, is enough to establish a concrete injury. This theory suffers from two fatal defects:

---

[3] We do not decide the scope of the FDCPA's statutory cause of action. Under *Steel Co.*, we must decide questions of Article III standing, which here are dispositive, before reaching questions about the scope of a statutory cause of action. *See* 523 U.S. at 88–93.

16

First, Trichell and Cooper do not allege that the collection letters posed any risk of harm to themselves. Second, any risk that the letters may have posed to them had dissipated by the time they filed suit.

*Risk to Plaintiffs*: An injury in fact must be particularized as well as concrete. *See Spokeo*, 136 S. Ct. at 1548. To be particularized, the injury "must affect *the plaintiff* in a personal and individual way." *Defs. of Wildlife*, 504 U.S. at 560 n.1 (emphasis added). In other words, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). The same principle holds true when the plaintiff invokes a statutory cause of action: "where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury *to that person* as a result of the violation of the newly created legal rights." *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) (emphasis added). Because "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), what matters is whether the plaintiff has suffered a concrete injury, not whether other parties have.

The plaintiffs' risk-as-injury theory founders because their complaints do not allege that the collection letters "substantially increased the risk" of harm to Trichell or Cooper. *Thole*, 140 S. Ct. at 1621. Trichell asserts only that the letters

17

"would lead *a consumer* to believe that they [*sic*] had to pay this debt to avoid being sued, credit reported, or having to pay the full amount at some point in the future." Trichell App. 1 at 6 (emphasis added). Cooper comes closer, but he too falls short. He alleges that the collection letter sent to him "puts an unsophisticated consumer, i.e. Plaintiff, into a difficult position. The consumer is enticed by the prospect of saving a great deal of money on a debt but not advised that by making a payment, he will be re-starting the statute of limitations that could subject him to a future lawsuit for which he previously had an absolute defense." Cooper App. 1 at 8. Cooper's allegation that he was put into a "difficult position" does not support a plausible inference that he was at substantial risk of making any payment. Nor does Cooper's allegation that the collection letter "expos[ed] him to a potential lawsuit that he would not have previously been exposed to." *Id.* at 8–9. Moreover, Cooper's complaint reflects a perfect understanding of why the collection letters were arguably misleading, without any suggestion that Cooper figured this out only after flirting with the idea of making a payment. With no plausible allegation that *they* were ever at substantial risk of being misled, Trichell and Cooper cannot show standing based on such a risk to others.[4]

---

[4] The dissent posits that the increase in risk must be measured in relative terms, not absolute amount. *Post*, at 43 n.2. But an action creating a small risk of injury cannot support Article III standing on the theory that the risk, although not "substantial in itself," is "substantially *increased*" from zero. *Id.* (cleaned up). To the contrary, no small risk of injury

18

*Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), reinforces our conclusion.  That case involved an FDCPA requirement to tell recipients of debt-collection letters how to preserve their rights to contest the debt.  *Id.* at 332.  The debt collector failed to provide the notice, the plaintiff sued, and the Seventh Circuit affirmed a dismissal for lack of Article III standing.  The court reasoned that, because the plaintiff had never planned to contest the debt, she was never at risk of forfeiting her rights.  *See id.* at 334.  And because the debt collector's "bare procedural violation" did not increase the risk of any harm to the plaintiff's concrete interests, it could not support Article III standing.  *Id.* at 334–35; *see also Earth Island Inst.*, 555 U.S. at 496 ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing").  Moreover, the likely reaction of "unsophisticated consumer[s]" may inform a merits determination whether a communication is misleading, but it cannot allow "those who have not been injured to vindicate the rights of those who have."  *Casillas*, 926 F.3d at 336

---

would satisfy the Article III requirement of imminence.  *See*, *e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–14 (2013).  And that imminence requirement—of at least a "'substantial risk' that the harm will occur," *id.* at 414 n.5—is precisely what *Thole* cited for the proposition that the challenged act must have "substantially increased the risk" of harm to the plaintiff.  140 S. Ct. at 1621.  The Court was plainly speaking in terms of the absolute increase rather than the percentage increase—which would be infinite in every case where the plaintiff was at no risk before the defendant acted.

19

n.3. The same logic controls this case—Trichell and Cooper cannot prove standing merely by alleging risks posed to consumers other than themselves.

Our analysis draws further support from *Frank v. Autovest, LLC*, No. 19-7119, 2020 WL 3053199 (D.C. Cir. June 9, 2020). There the plaintiff claimed that the defendants had violated the FDCPA by filing false affidavits in a collection action. The plaintiff invoked the same FDCPA provisions at issue here: Section 807's prohibition on misleading statements and Section 808's prohibition on unfair collection methods. *Id.* at \*2. The D.C. Circuit held that the plaintiff lacked standing because the false affidavits did not mislead or otherwise injure the plaintiff. *Id.* As for the judgment of Congress, the court stressed that "[n]othing in the FDCPA suggests that *every* violation of the provisions implicated here" creates an Article III injury. *Id.* at \*3. Moreover, it made no difference that the affidavits might have misled a hypothetical unsophisticated debtor. Tracking *Casillas*, the court explained that "[a]fter *Spokeo*, a plaintiff must demonstrate a subjective— that is, an actual—personal injury for standing even when his merits argument turns on the perspective of an objective, unsophisticated consumer." *Id.* at \*4. Like the plaintiff in *Frank*, Trichell and Cooper have failed to allege such a personal injury.

We recognize that other circuits disagree. In *Macy v. GC Services Limited Partnership*, 897 F.3d 747 (6th Cir. 2018), which involved the same FDCPA

20

provisions at issue in *Casillas*, the Sixth Circuit found standing based on the increased forfeiture risk to consumers in general, without any showing that the failure to provide notice placed the plaintiffs at greater risk. *See id.* at 758–59. Likewise, in *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75 (2d Cir. 2018), which involved the FDCPA's prohibition on misleading communications, the Second Circuit found standing based only on a risk of harm, even though the plaintiff never alleged that the communication at issue might have affected him personally. *See id.* at 80–82.

In our view, the approach of the Seventh and D.C. Circuits is more faithful to Article III. As we have explained, a statutory violation that poses a risk of concrete harm to consumers in general, but not to the individual plaintiff, cannot fairly be described as causing a particularized injury to the plaintiff. Here, neither Trichell nor Cooper has alleged such a particularized injury.

*Dissipated Risk*: In any event, any risk to Trichell and Cooper had entirely dissipated by the time they filed their respective complaints. As noted above, the complaints explain perfectly well why the collection letters were arguably misleading. The complaints thus did not, and could not, make any allegation that Trichell or Cooper was at risk of being misled in the future. Moreover, any past risk had dissipated before they filed the complaints, and courts must assess Article III standing as of when a complaint is filed. *See Focus on the Family v. Pinellas*

21

*Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003). In other cases finding standing on the ground that the defendant's statutory violation had increased the plaintiff's risk of injury, the risk still existed when the complaint was filed. *See*, *e.g.*, *Spokeo*, 867 F.3d at 1115–17 (ongoing risk of harm from disclosure of false credit information).

By contrast, this Court has rejected claims of Article III standing where the plaintiff's risk of harm had dissipated before the complaint was filed. In *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), a bank failed to timely record a discharge of the plaintiff's mortgage, and New York law provided a statutory cause of action for the failure. But the bank recorded the discharge before the plaintiff filed his lawsuit, and no harm had befallen the plaintiff in the interim. On these facts, with an allegation "only that [the bank] recorded the [discharge] late and nothing else," the Court held that the plaintiff "failed to establish that he suffered or could suffer any harm that could constitute a concrete injury." *Id.* at 1003. Later, two members of the *Nicklaw* panel elaborated that no Supreme Court decision "holds—or even hints—that a plaintiff has standing to sue because he faced a risk of harm that never materialized and has since disappeared." *Nicklaw v. CitiMortgage, Inc.*, 855 F.3d 1265, 1267 (11th Cir. 2017) (W. Pryor, J., respecting the denial of rehearing *en banc*).

So too here:  Even if Trichell and Cooper were placed at risk of being defrauded when they received their collection letters, the risk never materialized, had dissipated before the complaints were filed, and cannot possibly threaten any future concrete injury.  For this additional reason, Trichell and Cooper cannot show Article III standing based on a risk of injury.

Trichell counters that this analysis is inconsistent with *Holzman v. Malcolm S. Gerald & Associates, Inc.*, 920 F.3d 1264 (11th Cir. 2019), which permitted an FDCPA claim to go forward on facts similar to those alleged here.  But *Holzman* did not address any question of Article III standing.  And "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011).  *Holzman* thus provides no support for the plaintiffs.

## 2

Trichell and Cooper also seek to base standing on a claimed informational injury.  They contend that the FDCPA gives them a right to receive truthful communications from debt collectors, which makes any violation of that right qualify as a concrete injury.  We disagree.

The plaintiffs' theory invokes two Supreme Court cases addressing when a denial of information constitutes an injury in fact.  In *Public Citizen v. DOJ*, 491

23

U.S. 440 (1989), the Court held that the government's refusal to disclose information about prospective judicial nominees, as assertedly required by the Federal Advisory Committee Act, constituted a concrete Article III injury. *See id.* at 448–50. Likewise, in *FEC v. Akins*, 524 U.S. 11 (1998), the Court held that the government's refusal to compel disclosure of information about a political group, as assertedly required by the Federal Election Campaign Act, also constituted a concrete Article III injury. *See id.* at 21–25. For two reasons, these cases provide no support to Trichell and Cooper.

First, the statutes at issue in *Public Citizen and Akins* made certain information subject to public disclosure. But the FDCPA is not a public disclosure law at all. The provisions at issue here create no substantive entitlement to receive information from debt collectors. Instead, they provide only that debt-collection letters may not be misleading or unfair. *See* 15 U.S.C. §§ 1692e, 1692f. And the gravamen of the plaintiffs' complaints is not that they sought and were denied desired information, but that they received unwanted communications that were misleading and unfair. The informational-injury cases thus are inapposite.

*Casillas* makes a similar point. That case involved FDCPA provisions requiring debt collectors to disclose specific information about what the recipient of a letter must do to preserve statutory rights to contest the debt. *See* 926 F.3d at 334–35. Yet the Seventh Circuit described the provisions as "procedural" ones

24

designed to protect against forfeitures, rather than "sunshine" provisions making information available to all who wish to have it. *See id.* at 337–39. And given that characterization, the court held that the critical fact for standing purposes was not that the debt collector had failed to give the notice required by the FDCPA, but that the failure created no risk of a forfeiture by the plaintiff. *See id.* at 338. If that line of reasoning governs FDCPA provisions requiring the disclosure of specific information about how to preserve rights, then it surely also governs FDCPA provisions that merely prohibit misleading or unfair communications.

Second, the plaintiffs in *Public Citizen* and *Akins* identified consequential harms from the failure to disclose the contested information. The advocacy organizations in *Public Citizen* alleged that they needed the information to "participate more effectively in the judicial selection process." 491 U.S. at 449. And the voters in *Akins* alleged that the information "would help them (and others to whom they would communicate it) to evaluate candidates for public office." 524 U.S. at 21. Trichell and Cooper have identified no comparable downstream consequences from their receipt of allegedly misleading communications that failed to mislead. Absent any such concrete impact, they can complain only about *receiving* information that had no impact on them. As several other courts have recognized, an asserted informational injury that causes no adverse effects cannot satisfy Article III. *See Frank*, 2020 WL 3053199, at *3; *Casillas*, 926 F.3d at 338;

25

*Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 467 (6th Cir. 2019); *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346–47 (4th Cir. 2017).

Finally, we note that *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), is also inapposite. That case arose under the Fair Housing Act of 1968, which makes it unlawful to falsely state to any applicant for housing, because of the applicant's race, that available housing is unavailable, and which provides for private civil enforcement. *See id.* at 367 n.2, 372 n.11. Construing these provisions, the Court held that a black tester, employed by a housing organization to detect unlawful discrimination, had standing to sue for false representations made to her even though she did not intend to rent an apartment. *Id.* at 373–74. Trichell and Cooper claim to have suffered a similar injury when they received the allegedly misleading collection letters.

*Havens Realty* does not sweep that broadly. For one thing, it is unclear whether the Court rendered a holding about the concreteness of the tester's injury, as opposed to whether Congress had made the injury legally cognizable under the Fair Housing Act. *See* 455 U.S. at 373–75. To be sure, *Havens Realty* did not itself distinguish those questions, but *Defenders of Wildlife* and *Spokeo* make clear that we must. In any event, the Fair Housing Act does not seek to vindicate some amorphous interest in receiving unusable housing information. Instead, it protects the weighty interest in not being subjected to racial discrimination, which can

26

inflict a concrete injury on anyone who "personally" experiences it. *See Wright*, 468 U.S. at 755 (quotation marks omitted). Trichell and Cooper allege nothing comparable here, so their harm in receiving information that might mislead others cannot support Article III standing.

III

Neither Trichell nor Cooper suffered an injury in fact when they received allegedly misleading communications that did not mislead them. Because they lack Article III standing, we vacate the district courts' judgments and remand the cases with instructions to dismiss for lack of Article III standing.

**VACATED** and **REMANDED**.

MARTIN, Circuit Judge, concurring in part and dissenting in part:

Keith Cooper and John Trichell received letters from Midland Credit Management, Inc. ("Midland") seeking to collect on time-barred debt. Mr. Cooper and Mr. Trichell view these letters as deceptive because they gave the false impression that debts previously owed by the men were still legally enforceable. Mr. Cooper goes a step further, saying that if he had responded to the letter by making a payment on the time-barred debt, he would have unwittingly restarted the statute of limitations. In other words, his payment would have converted a debt he was not legally obligated to pay into one he was. Plaintiffs claim these letters violate the Fair Debt Collection Practices Act ("FDCPA"), which prohibits "false, deceptive, or misleading representation[s]" and "unfair or unconscionable means" to collect debt. 15 U.S.C. §§ 1692e, 1692f.

I believe both plaintiffs have satisfied Article III's concreteness requirement by alleging that Midland sent them deceptive letters in violation of §§ 1692e and 1692f. Because in addition, Mr. Cooper alleged particularized injury, I believe he satisfied Article III's injury-in-fact requirement. As for Mr. Trichell, I agree with the majority that he lacks standing to bring his claim because he failed to allege any particularized harm.

28

## I.

I begin with basic principles of our Article III jurisprudence. The majority is right to say that, in order to satisfy the injury-in-fact requirement for Article III standing, a plaintiff must allege an injury that is both "concrete" and "particularized." Spokeo v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016). The majority is also correct that the Supreme Court in Spokeo recognized an injury need not be "tangible" to satisfy the concreteness requirement. Id. at 1549. Rather, even intangible injuries, such as the "risk of real harm," may be concrete. Id. In this regard, the Supreme Court tells us that "both history and the judgment of Congress" inform our analysis of whether an intangible injury is sufficiently concrete. Id. And while the majority opinion recognizes this, it makes no mention of the fact that when a statutory right itself protects a concrete interest, a plaintiff need not allege "any additional harm beyond the one Congress has identified." Id.; see also Perry v. Cable News Network, Inc., 854 F.3d 1336, 1340–41 (11th Cir. 2017) (holding that a plaintiff alleging a violation of the Video Privacy Protection Act need not allege "any additional harm beyond the statutory violation" because both congressional judgment and common law support a finding of concreteness).

Contrary to the majority opinion, I read §§ 1692e and 1692f to protect a concrete interest, and both history and the judgment of Congress support this idea.

Plaintiffs' claims are analogous to the common law torts of abuse of process and fraudulent misrepresentation, and the violations they allege are at the very core of the interests Congress sought to protect when enacting the FDCPA. Left to decide this case on my own, I would hold that these plaintiffs satisfied Article III's concreteness requirement without having to allege "any additional harm beyond" the one Congress identified in enacting §§ 1692e and 1692f.

## A.

Although Congress's decision to grant a right to sue "is not determinative of Article III standing," its judgment is "instructive and important because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1268 (11th Cir. 2019) (quotation marks omitted); see also Daniel Townsend, Who Should Define Injuries for Article III Standing?, 68 Stan. L. Rev. Online 76, 81–83 (2015) (explaining that Congress is better positioned to gather facts and make empirical judgments about whether a practice is injurious). Here, Congress expressed its judgment to protect people's concrete interest in being free from false, deceptive, or unfair debt collection notices, when it enacted §§ 1692e and 1692f.

Congress passed the FDCPA after concluding that "debt collection abuse by third party debt collectors is a widespread and serious national problem." S. Rep. No. 95-382, at 2 (1977). The official Senate report on the FDCPA found,

30

> While unscrupulous debt collectors comprise only a small segment of the industry, the suffering and anguish which they regularly inflict is substantial. Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.

Id. The report went on to find that "[c]ollection abuse [by debt collectors] takes many forms, including . . . [the] misrepresentation of a consumer's legal right" as well as "simulating legal process." Id. Similarly, a House report concluded that at the time of the FDCPA's passage, "there ha[d] been an increasing incidence of debt collectors abusing consumers by using various means of harassment and deception," including by sending "phony legal documents." H. Rep. No. 95-131, at 2 (1977). Based on the "abundant evidence" of abusive and deceptive debt collection practices, Congress concluded that those practices contribute to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

To address these abuses, the FDCPA prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. One of the prohibited deceptive practices is misrepresentation of "the character, amount, or legal status of any debt." Id. § 1692e(2)(A). Likewise, a debt collector may not use any "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f. The

31

complaints allege that Mr. Cooper and Mr. Trichell each received letters suggesting they had to pay off certain debts to avoid being sued or reported to a credit agency. According to plaintiffs, these letters gave the impression that the debts they referenced were legally enforceable, when in fact they were barred by the statute of limitations. In Mr. Cooper's case, payment on his debt may have restarted the limitations period. Midland's letters thus presented "a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices." Macy v. GC Servs. Ltd. P'ship, 897 F.3d 747, 757 (6th Cir. 2018).

In reaching its conclusion that "the judgment of Congress disfavors Trichell and Cooper," Maj. Op. at 14, I fear the majority opinion trivializes the harm resulting from misleading debt collection letters. The majority holds that the receipt of a deceptive debt collection letter is "like an unwanted text message," which this Court said is insufficient to confer standing in Salcedo v. Hanna, 936 F.3d 1162, 1168 (11th Cir. 2019). It is not similar, according to the majority, to an unwanted phone call, which this court said is enough to establish standing in Cordoba, 942 F.3d at 1268. Neither comparison withstands scrutiny. The Salcedo plaintiff received a single text message from his former attorney offering a ten percent discount on legal services. 936 F.3d at 1165. The Cordoba plaintiff got advertising phone calls from DIRECTV. 942 F.3d at 1266. Marketing texts or

32

phone calls causing a temporary nuisance to the recipient are a far cry from one of

Midland's letters, which plaintiffs say falsely represented that they were on the

hook for tens of thousands of dollars of debt.

The majority also minimizes plaintiffs' injuries by analogizing them to a

person "taking offense that the government has violated other statutes."  Maj. Op.

at 15.  That the majority relies on Lujan v. Defenders of Wildlife, 504 U.S. 555,

112 S. Ct. 2130 (1992), for this proposition demonstrates the weakness of the

comparison.  In Lujan, environmental organizations challenged a regulation

requiring federal agencies to consult with the Secretary of the Interior about threats

to endangered species caused by agency action.  Id. at 558–59, 112 S. Ct. at 2135.

The appeals court held that the injury-in-fact requirement was satisfied because

Congress had "confer[red] upon all persons . . . an abstract, self-contained,

noninstrumental 'right' to have the Executive observe the procedures required by

law."  Id. at 573, 112 S. Ct. at 2143.  The Supreme Court reversed, reiterating that

standing does not exist to assert a "generally available grievance about

government" that "no more directly and tangibly" affects the plaintiffs "than it

does the public at large."  Id. at 573–74, 112 S. Ct. at 2143.  But in its discussion,

the Court recognized the difference between "generalized grievance" cases, like

Lujan, and others in which "plaintiffs are seeking to enforce a procedural

requirement the disregard of which could impair a separate concrete interest of

33

theirs." Id. at 572, 112 S. Ct. at 2142. The claims of Mr. Cooper and Mr. Trichell fall squarely into the latter category. They did not allege merely that Midland ran afoul of the FDCPA in some abstract or generally applicable sense. Rather, they say that Midland violated the FDCPA by sending them collection notices implying that their time-barred debts were still legally enforceable. In so doing, Midland impaired their concrete interest in being free from false, deceptive, or unfair debt collection communications.

Finally, the majority opinion speculates that the FDCPA's private right of action provision may not permit statutory damages in the absence of actual damages, and says this idea "reinforces" its view that Congress did not believe violations of § 1692e constitute concrete injury. Maj. Op. at 15. But this approach conflates our merits inquiry with our Article III standing analysis. Even if it were true that the FDCPA requires proof of "actual damages" as a prerequisite to damages,[1] this would at most reflect a judgment about whether such plaintiffs should prevail on their claims. It says nothing about whether Congress judged them to have suffered an injury in fact. See Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S. Ct. 1717 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the [plaintiff's] contention that particular conduct is

---

[1] As the majority correctly recognizes, this Court has not decided (and does not decide here) whether statutory damages are available under the FDCPA in the absence of actual damages. Maj. Op. at 16 n.3.

34

illegal . . . ." (quotation marks omitted)); Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) ("[A] merits determination is not a permissible one for the standing analysis, which assumes the merits of a litigant's claim . . . ."); Brown v. Medtronic, Inc., 628 F.3d 451, 457 (8th Cir. 2010) (observing that it is "important not to conflate" Article III's injury requirements with the "plaintiff's ultimate burden of proof as to the issues of damages and causation").

I believe the judgment of Congress supports plaintiffs' claim that they have each suffered concrete injury.

B.

Also instructive on whether a statutory violation constitutes a concrete injury is an examination of whether it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 136 S. Ct. at 1549. The majority recognizes that a statutory violation will often be sufficiently concrete when it is closely related to a claim that has historically been recognized at common law. Maj. Op. at 9–12. This Court's decision in Perry serves as an example. The panel found Mr. Perry had standing to assert a claim based solely on the violation of a provision of the Video Privacy Protection Act ("VPPA") that prohibited the wrongful disclosure of video tape rental or sale records, without any allegations of further harm. 854 F.3d

35

at 1340.  Our Court reasoned that a violation of the statute, without more, was sufficient for Article III standing because this provision of the VPPA bore a "close relationship" to the tort of intrusion upon seclusion.  Id. at 1340–41.  And in Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017), this Court found Mr. Pedro had standing based on a bare violation of a provision in the Fair Credit Reporting Act ("FCRA") that requires consumer reporting agencies to follow reasonable procedures "to assure maximum possible accuracy" of reported information.  Id. at 1278, 1280 (quoting 15 U.S.C § 1681e(b)).  Our Court reached this conclusion because the FCRA provision at issue had a "close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts."  Id. at 1280.

I see a close relationship between Mr. Trichell and Mr. Cooper's FDCPA claims and common law harms like the ones this Court recognized in Perry and Pedro.  As I discussed above, Congress enacted the FDCPA to provide redress against debt collectors who mistreat consumers by misrepresenting the character or legal status of debts, "simulating legal process," sending "phony legal documents," and harassing consumers at home and at work.  S. Rep. No. 95-382, at 2; H. Rep. No. 95-131, at 2.  And Congress recognized "abusive debt collection practices contribute to harms that can flow from mental distress, like 'marital instability' and 'the loss of jobs.'"  Demarais v. Gurstel Chargo, P.A., 869 F.3d 685, 691–92 (8th

36

Cir. 2017) (quoting 15 U.S.C. § 1692(a)).  These abuses, and the harms that flow from them, sound in the common law torts of abuse of process and fraudulent or negligent misrepresentation.

Abuse of process protects against the "the unscrupulous use of the courts by individuals as instruments with which to maliciously injure their fellow men." Bertero v. Nat'l Gen. Corp., 529 P.2d 608, 614 (Cal. 1974) (alteration adopted) (quotation marks omitted).  For over 300 years, common law courts have recognized that "contriving to injure someone by pretense and color of legal process demand[s] redress because it resulted in a loss of reputation, anxiety and the expenditure of funds in defense."  Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889, 343 N.E.2d 278, 281 (N.Y. 1975) (citing Savile v. Roberts (1698) 91 Eng. Rep. 1147).  Beyond that, "[t]he employment of process to extort property was, of itself, a sufficient cause of action," a principle which has carried into modern jurisprudence.  Id. at 282.  And while abuse of process has typically required the initiation of formal legal proceedings, the "effecting [of] a not too subtle threat . . . should be actionable" as well.  Id. at 283; cf. Ruberton v. Gabage, 654 A.2d 1002, 1005 (N.J. Super. Ct. App. Div. 1995) (defining "abuse of process" as "the abuse of procedural methods used by a court to acquire or exercise its jurisdiction over a person or over specific property." (quotation marks omitted)).

The common law also protects against harms resulting from intentionally false communications and misleading nondisclosures.  See Dan B. Dobbs et al., The Law of Torts § 662 (2d ed. June 2020 update); Restatement (Second) of Torts § 525 (1977); Cunningham v. Credit Bureau of Lancaster Cty., Inc., No. 17-cv-5102, 2018 WL 6062351, at *6 (E.D. Pa. Nov. 20, 2018) (observing that "the common law has long reflected an interest in avoiding the harms inherent to receiving misleading information")  And some common law courts have allowed plaintiffs "to recover for [emotional] distress arising where the defendant negligently transmits or fails to transmit important information."  Dobbs, supra, § 395.

There is a close relationship between these common law claims and the harms from which Congress sought to guard consumers when it passed the FDCPA.  Both Congress, by enacting the FDCPA, and the common law provided causes of action for the emotional harm caused by abusing legal process and deceiving consumers.  The majority fails to account for the similarity between §§ 1692e and 1692f, and abuse of process torts.  The majority also goes beyond requiring a showing that the harm has a close relationship with one recognized at common law.  It also says that plaintiffs must show that the alleged conduct satisfies "the bedrock elements of reliance and damages."  Maj. Op. at 11–12.  But this is mistaken, because, in order to satisfy Spokeo, congressionally proscribed

"conduct [need not] give rise to a <u>cause of action</u> under common law." <u>Susinno v. Work Out World Inc.</u>, 862 F.3d 346, 351 (3d Cir. 2017) (emphasis added); <u>see also Golan v. FreeEats.com, Inc.</u>, 930 F.3d 950, 958 (8th Cir. 2019) ("An alleged harm need not actually have been actionable at common law to satisfy this inquiry, rather it must have a "close relationship" to the type of harm that has traditionally been recognized as actionable."). If a plaintiff were required to satisfy every element of a common law cause of action before qualifying for statutory relief, Congress's power to "elevat[e] intangible harms" by defining injuries and chains of causation which will "give rise to a case or controversy where none existed before" would be illusory. <u>Spokeo</u>, 136 S. Ct. at 1549 (quotation marks omitted); <u>see also id.</u> (recognizing that Congress may "elevat[e] to the status of legally cognizable injuries concrete, <u>de facto</u> injuries that were previously inadequate in law" (alteration in original) (quotation marks omitted)). These plaintiffs have alleged intangible harms that are closely related to harms traditionally protected at common law, so they need only allege a violation of that statute to satisfy Article III's concreteness requirement.

## C.

The idea that where a statute itself protects a concrete interest, a plaintiff need not allege any harm beyond that which was identified by Congress, was as true before <u>Spokeo</u> as it is after. <u>See Spokeo</u> 136 S. Ct. at 1549 (citing <u>Fed.</u>

Election Comm'n v. Akins, 524 U.S. 11, 20–25, 118 S. Ct. 1777, 1784–87 (1998), and Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 449, 109 S. Ct. 2558, 2564 (1989)).  Both history and the judgment of Congress suggest that Midland's violations of the FDCPA constitute an injury to these plaintiffs' concrete interest in being free from false, deceptive, or unfair debt collection notices.  Thus, plaintiffs' allegations that Midland violated §§ 1692e and 1692f by sending them false and misleading letters satisfies Article III's concreteness requirement.

Other Circuit Courts agree.  The majority recognizes that both the Second and Sixth Circuits are at odds with its holding.  In Cohen v. Rosicki, Rosicki & Associates, P.C., 897 F.3d 75 (2d Cir. 2018), the Second Circuit considered whether the plaintiff had standing to assert an FDCPA violation for the defendant's failure to identify the proper creditor on a foreclosure complaint.  Id. at 79–80. That court rejected the defendant's argument that the plaintiff lacked standing because he "has alleged only a bare statutory procedural violation, divorced from any concrete harm."  Id. at 81 (alteration adopted) (quotation marks omitted).  It concluded that congressional judgment supported a finding of concreteness because Congress passed the FDCPA to "protect against the abusive debt collection practices likely to disrupt a debtor's life."  Id. (quotation marks omitted). Because the defendant's failure to identify the proper creditor in its complaint "could [have] hinder[ed] the exercise of [plaintiff's] right to defend or otherwise

40

litigate that action," the plaintiff's bare allegation of a statutory violation was sufficient to satisfy Article III's concreteness requirement. Id. at 81–82.

In Macy, the plaintiffs claimed the defendant debt collector failed to provide notice, as required under the FDCPA, that the plaintiffs could dispute their debts only in writing. 897 F.3d at 758. The plaintiffs alleged that the failure to provide this notice could lead a consumer to waive or otherwise not properly vindicate her rights under the FDCPA. Id. The Sixth Circuit said these plaintiffs satisfied the concreteness requirement because the defendant's FDCPA violations "created a material risk of harm to a congressionally recognized interest." Id. at 759. That interest—what the Sixth Circuit termed the "core object of the FDCPA"—was the elimination of abusive debt collection practices. Id. The court concluded that a violation of the in-writing requirement harms that interest because it increases the risk that the debtor will waive her right to verify and challenge her debts. Id. Along the same lines, Mr. Cooper and Mr. Trichell allege they were subject to deceptive, misleading, and unfair collection communications, the elimination of which was another core object of the FDCPA. See H. Rep. No. 95-131, at 2. They have thus alleged a concrete injury.

## II.

Of course, Mr. Cooper and Mr. Trichell cannot establish standing by solely alleging a concrete harm. Rather, Article III requires an injury that is both

41

"concrete and particularized." Spokeo, 136 S. Ct. at 1548 (quotation marks omitted). The particularity requirement says that an injury "must affect the plaintiff in a personal and individual way." Id. (quotation marks omitted). I share the majority's view that Mr. Trichell's complaint fails the particularity requirement because it states only that the "least sophisticated consumer" would have been misled by Midland's debt collection letter. Mr. Trichell does not say he was affected in any way by the letter. See Frank v. Autovest, LLC, ___ F.3d ___, 2020 WL 3053199, at *4 (D.C. Cir. June 9, 2020) (holding that a plaintiff cannot establish standing merely by alleging that the "least sophisticated consumer" would have been misled by a debt collection communication). I therefore join the majority's conclusion that Mr. Trichell failed to allege particularized harm, and that his complaint must be dismissed for lack of standing.

However, I reject the majority's conclusion as to Mr. Cooper. He met his burden to allege a particularized injury at the pleading stage. Mr. Cooper's complaint alleges that Midland's letter put him "into a difficult position" because it "entice[d]" him to make a payment by offering significant savings on his debts. He says that if he had acted on Midland's letter and made a payment on his debt, he would have "expos[ed] him[self] to a potential lawsuit that he would not have previously been exposed to." According to the complaint, Midland's letter thus employed "deceptive means" "[w]ith respect to [Mr. Cooper]." I view Mr.

42

Cooper's complaint to sufficiently allege that Midland's letter put him at real risk

of making a payment on his time-barred debt.[2]  He has therefore made the

necessary showing, at the motion to dismiss stage, that he was affected by the

conduct at issue in a "in a personal and individual way."  Spokeo, 136 S. Ct. at

1549 (quotation marks omitted); see also Lujan, 504 U.S. at 561, 112 S. Ct. at 2137

("[O]n a motion to dismiss we presume that general allegations embrace those

---

[2] The majority says Mr. Cooper failed to allege an injury in fact because his complaint does not plausibly allege that he was at "substantial risk" of making payment on his debt.  Maj. Op. at 18.  However, in the context of statutory causes of action, the Supreme Court has not held that a plaintiff must allege risk that was "substantial" in itself.  Rather, in Spokeo the Court held that a plaintiff must allege a "real" or "material" risk of harm, 136 S. Ct. at 1550, and in Thole v. U.S. Bank N.A., 590 U.S. ___, 140 S. Ct. 1615 (2020), it suggested that a "substantially increased" risk of harm would be sufficient, id. at 1621 (emphasis added).  Mr. Cooper's complaint satisfies both articulations.  He was subject to a real or material risk of harm when Midland's letter put him in a "difficult position" by "entic[ing]" him to restart the limitations period on time-barred debt.  And he was subject to substantially increased risk of harm because before receiving Midland's letter, Cooper says he was not at all at risk of making payment on his debt.

Although the Court in Thole suggested that plaintiffs must allege a "substantially increased" risk of harm to satisfy Article III standing, the majority posits that, by citing to Clapper v. Amnesty International USA, 568 U.S. 398, 133 S. Ct. 1138 (2013), the Court really meant to say plaintiffs must allege a "substantial risk" of harm.  Maj. Op. at 18 n.4.  In Clapper, the Court held that plaintiffs challenging the constitutionality of a surveillance program lacked standing because they did not show a "certainly impending" risk or a "substantial risk" that their communications would be intercepted.  Id. at 414 & n.5, 133 S. Ct. at 1150 & n.5.  In my view, the Thole Court's failure to expressly adopt Clapper's "substantial risk" language was no accident.  Unlike Thole, which addressed a claim arising under ERISA, 140 S. Ct. at 1618, Clapper did not involve a statutory cause of action.  And as the Third Circuit has recognized, the Supreme Court requires a lesser magnitude of risk for statutory injuries in order to "strike[] a balance between Congress's power to define injuries . . . and the requirement that—absent a statutory right of action—a threatened harm be certainly impending or based on a substantial risk of harm to amount to injury in fact."  Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 113 (3d Cir. 2019) (citation and quotation marks omitted).

43

specific facts that are necessary to support the claim." (alteration adopted) (quotation marks omitted).

The majority looks to the Seventh Circuit's decision in Casillas v. Madison Avenue Associates, Inc., 926 F.3d 329 (7th Cir. 2019), and the D.C. Circuit's decision in Frank to support its holding that Mr. Cooper did not allege a particularized harm. Neither case lends support to the majority's holding. In Casillas, the court assessed whether the plaintiff had alleged a concrete injury, as opposed to whether that injury was particularized. Id. at 333 ("The question here is whether Casillas has alleged that she suffered—or faced a real risk of suffering—a concrete harm."); see also Spokeo, 136 S. Ct. at 1548 ("Concreteness . . . is quite different from particularization."). And to the extent Casillas held that plaintiffs cannot satisfy the injury-in-fact requirement by alleging an FDCPA violation alone, Casillas suffers from the same fundamental flaw as the majority opinion. It fails to recognize that where a statute itself protects a concrete interest, a plaintiff need not allege any more than the harm identified by Congress. The panel in Casillas never considered this avenue for establishing injury in fact, as evidenced by its failure to consult the common law or the judgment of Congress before concluding that the plaintiff failed to allege an injury in fact. See id.; cf. Macy, 897 F.3d at 759 (finding standing after concluding that Congress established

the FDCPA provision at issue to protect a concrete interest); Cohen, 897 F.3d at 80–81 (same).

The majority's reliance on Frank is similarly unavailing. The Frank court assessed an FDCPA plaintiff's standing at the summary judgment stage, concluding that the plaintiff failed to meet her burden because there was no testimony that "she was . . . confused, misled, or harmed in any relevant way during the collection action." ___ F.3d ___, 2020 WL 3053199, at *2. Here, in contrast, the court is assessing standing at the pleading stage, which requires only "general factual allegations" of personal injury. Lujan, 504 U.S. at 561, 112 S. Ct. at 2137. Mr. Cooper satisfied this burden by asserting he was confused and misled by a collection letter offering savings on time-barred debt, the payment of which might have restarted the applicable limitations period.

### III.

The majority also concludes that Plaintiffs could not have suffered an injury in fact because any risk to them "had entirely dissipated by the time they filed their respective complaints." Maj. Op. at 21–22. I reject this conclusion as well. As set out above, the concrete injury identified by Congress was the risk of being misled by deceptive collection letters into paying time-barred debt. Mr. Cooper's complaint adequately alleges that he personally experienced exactly this concrete harm, thus satisfying Article III's injury-in-fact requirement. See Macy, 897 F.3d

45

at 759 (holding that an alleged FDCPA violation creating a "material risk of harm to a congressionally recognized interest" satisfies the concreteness prong of the injury-in-fact requirement); Strubel v. Comenity Bank, 842 F.3d 181, 190 (2d Cir. 2016) ("[A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." (quoting Spokeo, 136 S. Ct. at 1549)).  I see no basis for requiring a plaintiff previously at risk of being misled to allege a continuation of that risk.

Nicklaw v. CitiMortgage, Inc., 839 F.3d 998 (11th Cir. 2016), is not to the contrary.  Our court held that Mr. Nicklaw lacked standing because he failed to allege that he was ever subject to either "a harm [or] a material risk of harm that the district court could remedy."  Id. at 1003.  The Nicklaw panel also properly recognized that plaintiffs may satisfy Article III standing by alleging statutory violations which expose a plaintiff to a material risk of harm.  Id. at 1002–03.  And while it is true that standing is determined at the moment a plaintiff's complaint is filed, there is no requirement that a plaintiff seeking redress for past injury show ongoing harm.  See City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S. Ct.

46

1660, 1669 (1983) (noting that allegations of past harm were sufficient to establish standing for damages claim).[3]

The D.C. Circuit addressed a similar circumstance in Jeffries v. Volume Services of America, Inc., 928 F.3d 1059 (D.C. Cir. 2019). The question in Jeffries was whether the plaintiff suffered an injury in fact when a vendor printed the expiration date and all sixteen digits of her credit card number on her receipt, in violation of the Fair and Accurate Credit Transactions Act ("FACTA"). Id. at 1062. The plaintiff argued that she suffered a concrete injury because the receipt exposed her to an "increased risk of identity theft." Id. at 1063–64. In response, the vendor argued that the plaintiff could not satisfy the injury-in-fact requirement because the plaintiff "through her own efforts, . . . has mitigated any risk of a third party accessing her credit card information." Id. at 1066. The court rejected this argument, observing that FACTA was designed not to criminalize identity theft, but to ensure that consumers do not experience "an increased risk" of identity theft. Id. Although that risk did not materialize, the panel recognized that the plaintiff nevertheless experienced harm, analogizing her to "someone who replaces the pin in a grenade [and] remains, nonetheless, previously at risk of getting blown up."

---

[3] While the majority cites Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263 (11th Cir. 2003), for the proposition that an injury or a risk of injury must be present at the time that a complaint is filed, Maj. Op. at 21, that case discusses only equitable standing, not standing in a suit for damages. Focus on the Family, 344 F.3d at 1275.

47

Id. at 1067 (emphasis omitted).  Similarly, even though Mr. Cooper was not tricked into making payments on his time-barred debt, Midland's letters nevertheless put him at risk of doing so.

Here, Mr. Cooper seeks retrospective relief for his past exposure to precisely the sort of risk Congress sought to curb when it enacted the FDCPA.  I say that is enough.  To require him to have actually been deceived presses far beyond Spokeo's requirements and significantly undermines Congress's ability to identify and prevent risks to the public.

## IV.

Congress passed the FDCPA to protect consumers' concrete interest in being free from deceptive and abusive debt collection notices.  Both the conduct Congress sought to prevent and the harms resulting from that conduct have close analogues in common law causes of action.  Mr. Cooper has plausibly alleged that he suffered precisely the harm Congress sought to prevent in passing this statute.  I understand Spokeo to require us to recognize Mr. Cooper's injury in fact under these circumstances.